IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GREGORY REICHERT,  Plaintiff, v. WHIRLPOOL CORPORATION, Defendants. | NO. 3:18-cv-00001  JUDGE RICHARDSON |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 49). Plaintiff responded, (Doc. No. 53), Defendant replied, (Doc. No. 55), and the motion is ripe for review. For the reasons discussed below, Defendant's Motion will be **GRANTED**.

### BACKGROUND[1]

Plaintiff was an employee of Maytag Corporation which Whirlpool acquired shortly before Plaintiff's retirement in 2006 at age 59. (Doc. No. 54 ¶ 3, 6). Whirlpool maintains for certain former Maytag employees a Retiree Health Reimbursement Arrangement ("RHRA"), which provides reimbursements for some medical expenses incurred by retirees. (*Id.* at ¶ 4).

In May 2012, when Plaintiff turned 65, HealthScope Benefits (administering the RHRA at the time) sent Plaintiff a letter advising him that he was eligible for an RHRA benefit. (*Id.* at ¶ 7). He then received an RHRA benefit of $85 per month from May 2012 through December 2016.

---

[1] Unless otherwise noted, the facts in this section are taken from facts in the Complaint that are not disputed and the Plaintiff's Response to Statement of Undisputed Facts (where the facts are undisputed). *See* Doc. Nos. 1, 54.

1

(*Id.* at ¶ 7). In early 2017, Plaintiff received a letter (from OneExchange, which was then administering the benefit advising him of a loss of funding for RHRA), and he subsequently ceased receiving the benefit. (*Id.* at ¶ 8).

Plaintiff then contacted OneExchange by telephone, and he received conflicting responses to his questions regarding the termination of his benefit. (*Id.* at ¶ 9). On May 8, 2017, Plaintiff wrote a letter to the Whirlpool Benefits Center, stating that he did not understand why the benefit had been terminated and asking for "a written letter from Whirlpool stating the reason for the loss of this $85 monthly benefit."[2] (*Id.* at ¶ 9; Doc. No. 53-2). On June 20, 2017, Plaintiff's attorney sent another letter to the Whirlpool Benefits Center stating that "[Plaintiff] wrote a letter to Whirlpool's Benefits Center on May 8, 2017, asking for an explanation as to why the funding [for his RHRA Benefits] was terminated" and "seeking a written and detailed explanation of why [Plaintiff's] monthly [RHRA benefit] has been interrupted or terminated." (Doc. No. 54 ¶ 10; Doc. No. 53-3). During this same time period, Plaintiff also contacted the Whirlpool Benefits Center via telephone. (Doc. No. 54 ¶ 12).

Plaintiff sent a third letter on August 15, 2017, this time addressed to the Welfare Benefits Committee. (*Id.* at ¶ 11; Doc. No. 53-1). The letter stated: "If you have decided to terminate my participation in the plan, please send me a letter explaining the language in the plan document that controls and requires that I be terminated from plan participation. I am also renewing my request for a copy of the plan documents that I first made to you through my counsel on June 20, 2017."[3] (Doc. No. 53-1).

---

[2] The referenced letters have been entered into the record multiple times. For convenience and clarity, the Court has chosen to use citations to the most recently filed copies of the letters.

[3] Plaintiff denied quotations from this letter in his Response to the Statement of Undisputed Facts. (Doc. No. 54 ¶ 11). Plaintiff's denial did not rest on any dispute of fact or quotation of the content

2

The RHRA benefit Plaintiff sought to recover is offered under the Whirlpool Corporation Group Benefit Plan for Retirees, and the Plan Document states that the Plan Administrator for each benefit will be listed in the program document.[4] (Doc. No. 54 ¶ 5). The Summary Plan Description ("SPD") for the RHRA benefit names the Plan Administrator as the Welfare Benefits Committee.[5] (*Id.*) According to the SPD, Whirlpool Corporation (the only Defendant in this matter) is the Plan Sponsor. (Doc. No. 51-4 at 10).

In his Complaint, filed in 2018, Plaintiff sought 1) his benefit under the RHRA plan; 2) Employee Retirement Income Security Act ("ERISA") penalties for failure to provide plan

---

of the letter, but instead upon an argument concerning the legal meaning of the term "plan documents." Plaintiff has admitted the letter into evidence and quoted from it on multiple occasions. Therefore, the Court has reproduced the relevant portion of the letter as an undisputed fact.

[4] Plaintiff denied the facts recited in this paragraph (the one to which this footnote corresponds) in his response to the Statement of Undisputed Facts. (Doc. No. 54 ¶ 5). In the denial, Plaintiff stated that "[a]lthough the Summary Plan Description for RHRA names an in-house committee as the Plan Administrator, Whirlpool failed to file with the Court in support of its motion for summary judgment any documents showing that (1) the Whirlpool Welfare Benefits Committee was incorporated as a separate legal entity that could be or was subject to being sued, and (2) that the Whirlpool Board of Directors ever took Board of Directors' action in the form of a resolution or otherwise to constitute or create the Welfare Benefits Committee as the Plan Administrator. Under these circumstances, and based on the legal authorities cited on pages 8-13 of Plaintiff's response to motion for summary judgment, an unincorporated division or mere committee within a corporation cannot be sued, and all responsibility and liability falls on the corporation itself. That includes the responsibility for being the Plan Administrator." (*Id.*) Plaintiff cited several cases in his Response indicating that a division within a corporation cannot be sued. (Doc. 53 at 10-12). As discussed below, ERISA penalties present an exception where the proper entity to be sued is designated in the Plan, and the Plan Administrator does not have to be a legal entity. Plaintiff does not dispute the factual statements in this paragraph (the one to which this footnote corresponds). In fact, in his denial he states up front that "the Summary Plan Description for RHRA names an in-house committee as the Plan Administrator" and proceeds to make a purely legal argument. (Doc. No. 54 ¶ 5). Therefore, the Court treats the fact that the Plan Administrator was the Welfare Benefits Committee as undisputed by Plaintiff.

[5] The SPD lists the Welfare Benefits Committee as the Plan Administrator, and it provides the address and phone number of the Committee. (Doc. No. 51-4 at 10). The document also indicates that service of process can be made upon the Committee. (*Id.*).

3

documents, summary descriptions of the plan, and a written explanation of his benefit denial; and 3) attorney's costs and fees. (Doc. No. 1 at 4-8). In March 2018, the Court entered an Order staying the case to allow the Welfare Benefits Committee to consider Plaintiff's claim for his benefit and ordering the exchange of initial disclosures. (Doc. No. 22). Subsequently, the Committee approved Plaintiff for the benefit for 2017 and 2018 because of "deficiencies" present in the process of correcting erroneous payments. (Doc. No. 54 ¶ 17). The Court then dismissed Plaintiff's claim for his benefit. (Doc. No. 33). All that remains for resolution by this Court is Plaintiff's claims for penalties and for attorney's fees. Defendant has moved for summary judgment as to these remaining claims. (Doc. No. 49).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248, 106 S. Ct. 2505. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]' " *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505. A genuine dispute of material fact exists if the evidence is such that a reasonable jury

4

could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## ANALYSIS

Defendant points to two reasons why Plaintiff's claim that he is entitled to ERISA penalties should fail: 1) Plaintiff did not make a clear request for documents, and 2) Defendant cannot be liable for penalty fees, because such liability applies only to the Plan Administrator, which is not Defendant. (Doc. No. 50 at 4-7). Plaintiff counters that his request for "plan documents" was a recognizable term and that suing Defendant is appropriate because the purported Plan Administrator is a committee of Defendant and thus not a legal entity capable of being sued. (Doc.

5

No. 53 at 4-13). If the Motion were to be granted, Plaintiff concedes that he would not be entitled to attorney's fees. (*Id.* at 13-14). If the Motion were to be denied, Defendant concurs with Plaintiff that a ruling on the attorney's fees issue would be premature. (Doc. No. 55 at 9).

A. **Request for Documents**[6]

If a plan administrator fails to respond to a written request for documents within 30 days, the district court may impose a penalty of up to $110 per day at its discretion under ERISA.[7] 29 U.S.C. §§ 1132(c)(1), 1024(b)(4); *see also Macon v. J.C. Penney Co.*, 17 F. Supp. 3d 695, 700 (N.D. Ohio 2014), *aff'd* (Dec. 29, 2014) (denying penalties when the requests were via phone call). Any fees imposed under the statute are determined in the district court's discretion. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994). The Sixth Circuit has adopted the "clear-notice" standard, under which "the key question . . . is whether the plan administrator knew or should have known which documents were being requested." *Cultrona v. Nationwide Life Ins. Co.*, 748 F.3d 698, 707 (6th Cir. 2014). When making this determination, a district court should consider the circumstances around the request for documents. *Id.*

---

[6] 29 U.S.C. § 1133 states that "every employee benefit plan shall . . . provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant . . ." This statute does not allow for penalties based on the plan administrator's failure to explain a denial—only the plan's failure. *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 735 (6th Cir. 2008). Plaintiff indicated (without citation to the applicable statute) in his Complaint that he was entitled to ERISA penalty fees based on the Plan Administrator's failure to explain the denial. (Doc. No. 1 at 5-6). Plaintiff seems to have since abandoned this argument. (Doc. No. 53). Regardless, the Court would find the argument unpersuasive. Therefore, the only penalty issue before the Court arises from the Plan Administrator's failure to produce documents.

[7] The documents required to be produced under the statute are: "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

Courts have found that a general request for documents, without reference to specific documents, does not provide "clear notice" unless other circumstances indicate that the party should know what documents are requested. *See e.g.*, *Butler v. FCA US, LLC*, 706 F. App'x 256, 260 (6th Cir. 2017) (upholding under abuse of discretion standard district court decision to not award penalties when emails did not request "specific documents"); *Cultrona*, 748 F.3d at 707 (upholding an award of penalties against defendants for not sending documents in response to a general request for "all documents" when the defendant had other evidence as to the documents plaintiff sought); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 554 (6th Cir. 2012) (not allowing penalties when plaintiffs requested "plan documents" but had in mind specific documents, such as actuarial reports). In some cases, courts have validated requests for plan documents without indicating that a plaintiff was required to specify particular documents requested. *Gregory v. Goodman Mfg. Co., L.P.*, No. 4:10-CV-23, 2012 WL 685298, at *5 (E.D. Tenn. Jan. 13, 2012), *report and recommendation adopted*, No. 4:10-CV-23, 2012 WL 685283 (E.D. Tenn. Mar. 2, 2012) (assessing penalties when "plan documents" were not provided); *Dies v. Provident Life & Acc. Ins. Co.*, No. 3:04-0113, 2006 WL 208878, at *9 (M.D. Tenn. Jan. 25, 2006) (same).

There is no dispute as to material fact on this issue. Plaintiff sent a letter on August 15, 2017, stating "[i]f you have decided to terminate my participation in the plan, please send me a letter explaining the language in the plan document that controls and requires that I be terminated from plan participation. I am also renewing my request for a copy of the plan documents that I first made to you through my counsel on June 20, 2017." (Doc. No. 53-1). The referenced June 20, 2017, letter from Plaintiff's attorney contained no request for documents; instead, it sought an explanation for the termination and interruption of the Plaintiff's benefit. (Doc. No. 54 ¶ 10; Doc. No. 53-3).

Though some courts have indicated that a request for "plan documents" can be sufficient to require production of documents, Plaintiff's August 15 letter claimed to renew a request for "plan documents" that Plaintiff supposedly made in a letter that in fact included no request for documents. These letters, individually or in combination, were insufficient to provide Defendants with "clear notice," *Butler*, 706 F. App'x at 260, of what documents Plaintiff sought. Further confusing the August 15 request, the June 20 letter from his attorney that Plaintiff referenced was addressed to a party other than the Plan Administrator. And even if the Plan Administrator had received the June 20 letter, as indicated, it would have provided no clarity as to the identity of the documents being requested. Though Plaintiff attempted to get *information* regarding his benefit prior to the August 15 letter to the Plan Administrator, he made no other written request for *documents*, and his other communications were addressed to or handled by parties other than the Plan Administrator. (Doc. No. 54 ¶ 12). Therefore, the Plan Administrator did not have context or notice of precisely what documents Plaintiff sought, and the phone calls and letters addressed to other parties than the Plan Administrator on the record are irrelevant to the inquiry as to whether the Plan Administrator had "clear notice" of the documents Plaintiff requested. *Malaney v. AT & T Umbrella Ben. Plan No. 1*, No. 2:10-CV-401, 2010 WL 5136206, at *7 (S.D. Ohio Dec. 9, 2010) (noting that a penalty liability "can only reasonably be said to arise after the plan administrator has received the request, or at the very least has knowledge of the request").

Absent such clear notice, no document(s) need be produced. *See Butler*, 706 F. App'x at 260. Therefore, the Court finds that Plaintiff's letter in August 2017 was insufficient to trigger ERISA penalties. If an employee wants to have penalties imposed on the back end for failure to produce documents, the employee simply has to do his or her part better on the front end than was done here. And even if the Plaintiff's letter had been clear enough to trigger ERISA penalties, the

Plaintiff would still not be entitled to fees because—as discussed below—he has not sued a party that is liable for the failure to provide documents under ERISA.

## B. Entity Sued

The law in the Sixth Circuit is clear that "[o]nly a plan administrator can be held liable under section 1132(c)." *Hiney Printing Co. v. Brantner*, 243 F.3d 956, 961 (6th Cir. 2001) (quoting *VanderKlok v. Provident Life & Accident Insurance Co.*, 956 F.2d 610, 617 (6th Cir. 1992)); *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002). The Sixth Circuit has rejected an "agency theory" whereby liability can be imposed on a corporation as a "de facto" plan administrator. *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 843 (6th Cir. 2007).[8] When a circuit does not recognize the agency theory, a district court can impose penalties only against a plan administrator; if the administrator is properly designated as a committee of a company, the company is not liable for penalties on behalf of the committee or based on the committee's failures. *Jones v. UOP*, 16 F.3d 141, 144 (7th Cir. 1994) (finding that a plan sponsor who received misaddressed requests for documents was not liable for penalties because "[t]he statute is plain: if a plan administrator is designated in the plan instrument, that is who has the statutory duty to respond to requests for information in timely fashion under threat of monetary penalty if he fails to do so"). The upshot appears to be that a plan sponsor is not liable for penalties on behalf of (or based upon the actions of) a committee acting as Plan Administrator,

---

[8] Indeed, the Sixth Circuit appears to reject the agency theory generally, and not only in situations where it is a corporation that is the alleged de facto plan administrator. In *Malaney*, for example, defendant AT & T was the plan sponsor and plan administrator. The plaintiff's request for documents was sent not to AT &T, but rather to the plan's claims administrator. The Sixth Circuit rejected the notion that "the receipt of [plaintiff's] request for Plan documents by the claims administrator is sufficient to satisfy the requirement for receipt of that request by the plan administrator." *Malaney*, 2010 WL 5136206, at *7. Especially because AT & T was not involved in the day-to-day affairs of the plan's claims administrator, AT & T was not liable under these circumstances for a penalty under Section 1132(c). *Id.*

9

even if the sponsor is aware of the requests; only the plan administrator has a statutory duty to respond to a request for documents.[9] *Id.* at 141, 145 ("If the plan designates an administrator and the sponsor makes no effort to impede participants' access to him, we cannot see what purpose would be served by the imposition of statutory penalties [against the sponsor].").

The statute defines administrator in the first instance as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A). "Person" is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). Plaintiff claims that he could not have sued the Plan Administrator in this instance, because the Plan Administrator is a committee—not a distinct legal entity capable of being sued. (Doc. 53 at 10-12). However, the statute does not require a plan administrator to be a separate legal entity, and courts have routinely held that a committee operating as plan administrator can be properly sued. *See e.g.*, *Carr v. Int'l Game Tech.*, 770 F. Supp. 2d 1080, 1099 (D. Nev. 2011) (collecting cases).

There is no genuine dispute of fact on this material issue. The plan document states that the Plan Administrator for each benefit would be set forth in the respective program document, and the SPD for the RHRA benefit identifies the Plan Administrator as the Welfare Benefits

---

[9] The Sixth Circuit has indicated that dismissal of a penalty fee is not appropriate if there is a question that a defendant has been administering the plan, and a plaintiff was never informed that it was contacting the wrong party. *Minadeo v. ICI Paints*, 398 F.3d 751, 759 (6th Cir. 2005); *see also SLF No. 1, LLC v. United Healthcare Servs. Inc.*, No. 2:12-00070, 2014 WL 518222, at *6 (M.D. Tenn. Feb. 7, 2014). Similarly, the Seventh Circuit has also indicated that an avenue of estoppel may be open if a plan sponsor holds itself out as the plan administrator. *Jones*, 16 F.3d at 141, 145. Here, Plaintiff contacted the correct Plan Administrator in the letter dated August 2017, but he then failed to include them in this action. Plaintiff has not argued that he did not know who the proper Plan Administrator was so as to add them as a party or that he was somehow deceived by the Plan Sponsor. And the conceivable availability of an estoppel theory is irrelevant where, as here, the "elements of an estoppel have not been established." *Id.*

Committee. (Doc. No 54 ¶ 4). The only Defendant to this action is the Whirlpool Corporation, which is not liable for ERISA penalty fees since it is the Plan Sponsor, not the Plan Administrator. Therefore, Plaintiff cannot recover ERISA penalty fees in this matter from the Plan Sponsor Whirlpool Corporation, the only named Defendant.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 49) will be **GRANTED**.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE